## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

Annabel B., Levi B., and Kimberly F., minors,
by Next Friend Brian Wilson, *et al.*,

                      Plaintiffs,

    v.

Eric HOLCOMB, in his official capacity as the
Governor of Indiana, *et al.*,

                      Defendants.

Case No. 3:23-cv-760-DRL-MGG

## PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION
## <u>DEFENDANTS' MOTION TO DISMISS</u>

Plaintiffs, by counsel, file this Response Brief in Opposition to Defendants' Motion to Dismiss.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................ 3

    I.    *Younger* and *Ashley W.* Do Not Require Abstention ......................................... 3

        A.    *Younger* abstention doctrine and principles of equity forbid courts from declining jurisdiction where it is given and require courts to withhold only equitable relief that would unduly interfere with state proceedings. ...................................................... 3

        B.    Plaintiffs' relief would not enjoin, delay, or unduly interfere with CHINS proceedings. .................................................................................................. 5

        C.    CHINS proceedings cannot provide an adequate remedy for Plaintiffs' injuries, and federal courts can grant Plaintiffs' specific, concrete relief........................................ 8

               1. CHINS Courts Cannot Order Defendants to Recruit and Retain Sufficient Foster Homes. ................................................................................................. 9

               2. CHINS Courts Cannot Address Caseworkers and Caseloads............................... 10

               3. CHINS Courts Cannot Grant Relief for Plaintiffs' Constitutional Claims........... 11

        D.    CHINS proceedings are not akin to criminal prosecutions, and Plaintiffs' are not targets of CHINS proceedings. .................................................................................................. 14

        E.    *Younger* requires consideration of countervailing federal interests and does not warrant blind deference to state interests. ................................................................. 17

    II.    *Rooker-Feldman* does not apply because Plaintiffs' allegations are unrelated to a state court decision, and Plaintiffs do not forfeit standing............................................................. 18

CONCLUSION.................................................................................................... 20

## INTRODUCTION

Indiana's foster system is in crisis and federal courts are the appropriate forum for children to seek relief from this crisis. Hoosier children enter foster care at nearly double the national average (4.6 per 1000), and the number of children in foster care is nearly double the national average (7.1 per 1000).[1] Indiana's time to reunification is 19.5% higher than the national standard, and its time to adoption is 52.3% higher than the national standard.[2] Indeed, permanency metrics show that Indiana is getting worse, not better.[3] From 2015-2020, Indiana saw a 34.7% increase in the average time to permanency.[4] Indiana's foster children also reenter foster care at astonishing rates. In 2021, 1 in 5 children who were discharged from foster care in Indiana reentered care.[5]

Indiana's Department of Child Services (DCS) has created a culture of fear and retaliation among foster parents and service providers that has contributed to a dangerous decrease in foster homes.[6] For example, DCS frequently removes foster children from stable foster home placements when foster parents request necessary services,[7] and DCS blacklists service providers that decline to rubber-stamp DCS recommendations.[8] Consequently, DCS's "gap in resources" for children

---

[1] *See* Child Trends, State-level Data for Understanding Child Welfare in the United States, Foster Care, Indiana, https://www.childtrends.org/publications/state-level-data-for-understanding-child-welfare-in-the-united-states (accessed Oct 20, 2023).

[2] *See* Indiana Court Improvement Program, Indiana Office of Court Services, Children and Families Division, FFY 2021 Court Performance Measures Report, at 5; *see also* Child Welfare Outcomes Report, U.S. Dept. of Health and Human Services, Administration for Children and Families, Children's Bureau (2021), available at https://cwoutcomes.acf.hhs.gov/cwodatasite/pdf/indiana.html (accessed Oct. 20, 2023).

[3] *See* Indiana Court Improvement Program, Indiana Office of Court Services, Children and Families Division, FFY 2021 Court Performance Measures Report, at 3.

[4] *See* Indiana Court Improvement Program, Indiana Office of Court Services, Children and Families Division, FFY 2020 Court Performance Measures Report, at 11.

[5] *See* Child Welfare Outcomes Report, U.S. Dept. of Health and Human Services, Administration for Children and Families, Children's Bureau (2021), available at https://cwoutcomes.acf.hhs.gov/cwodatasite/pdf/indiana.html (accessed Oct. 20, 2023).

[6] *See* ECF No. 16 at ¶¶249-258 (citing Child Welfare Group, *Evaluation of the Indiana Department of Child Services* (June 18, 2018); APSR 2022-2023 at 188-89).

[7] *See* ECF No. 16. at ¶¶249-258.

[8] *See* ECF No. 16 at ¶¶263-270.

who require a higher level of care than a foster home contributes to its overreliance on institutional placements.[9]

Furthermore, a recent investigation by the U.S. Department of Health and Human Services (HHS) Inspector General found that DCS has systematically failed to maintain and update medical records for foster children, placing all foster children, especially those with elevated medical needs, at serious risk of irreparable harm.[10] DCS's interim measures do not mitigate the risk of harm, and its promised solutions have yet to materialize.[11] Even then, DCS's systematic failure to provide foster and adoptive parents with the child's full and accurate medical information nullifies any benefits that would be produced by an improved recordkeeping system and contributes to further placement instability and foster care reentry.[12]

Accordingly, the Named Plaintiffs, through their Next Friends and on behalf of the proposed Class (collectively, "Plaintiffs"), seek declaratory and injunctive relief requiring DCS to cease practices that contribute to Indiana's caseworker, foster home, and services deficit, and requiring DCS to establish policies and practices likely to improve recruitment and retention of caseworkers, foster homes, and service providers. Without relief, Indiana's foster children will continue to be placed at substantial risk of harm in violation of the Due Process Clause of the Fourteenth Amendment, and their rights under the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"), and the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act.[13]

---

[9] *See id.* at ¶¶271-276 (citing Child Welfare Group, *Evaluation of the Indiana Department of Child Services* (June 18, 2018)).
[10] *See* ECF No. 16 at ¶¶240-242.
[11] *See* ECF No. 16 at ¶¶243-244.
[12] *See* ECF No. 16 at ¶¶245-248.
[13] At the time the original complaint was filed, Kimberly F. was still in DCS custody. *See* App. C to Defs'. Mot. to Dismiss, Tab C 40, ECF No. 20 (wardship terminated on August 23, 2023). The amended complaint relates back to the date of the original pleading because the amendment asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading. *See* Fed. R. Civ. Proc. R. 15(c)(1)(B). And Kimberly F. satisfies the

DCS, DCS Director Eric Miller, and Governor Eric Holcomb (collectively "DCS" or "Defendants") tell this Court to stay out of its affairs; Indiana can clean its own house, they say. They claim that federal lawsuits by children in CHINS proceedings are categorically barred in the Seventh Circuit, and that *Ashley W.* "requires dismissal here." ECF No. 23 at 9. But the Seventh Circuit rejected this sweeping claim, holding that "the scope and complexity of CHINS proceedings makes a one-size-fits-all solution inapt." *Ashley W. v. Holcomb*, 34 F.4th 588, 593 (7th Cir. 2022). Thus, disputes that can be resolved in a federal court must be resolved here, and "[d]isputes that can be resolved in a CHINS case must be resolved there. It is essential to determine which is which." *Id.* Plaintiffs' claims in this matter must be resolved in federal court because, contrary to Defendants' assertions, Plaintiffs cannot receive the relief they seek in CHINS proceedings.

Accordingly, Plaintiffs urge this Court to deny Defendants' motion to dismiss.

## ARGUMENT

I. **Younger and *Ashley W.* do not require abstention.**

   A. ***Younger* abstention doctrine and principles of equity forbid courts from declining jurisdiction where it is given and require courts to withhold only equitable relief that would unduly interfere with state proceedings.**

Federal courts are creatures of the Constitution, and their jurisdiction is defined by Congress, not the judiciary. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 359 (1989) (*NOPSI*). Accordingly, federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia,*

---

"inherently transitory" exception to mootness because the length of her wardship "cannot be determined at the outset and is subject to a number of unpredictable factors, thereby making it inherently transitory," and "there will be a constant class of persons suffering the deprivation complained of in the complaint." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010) (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).

19 U.S. (6 Wheat.) 264, 404 (1821). Only exceptional circumstances warrant a federal court abstaining from a case pending before it. *Younger v. Harris*, 401 U.S. 37 (1971) is one such exception.

Under *Younger*, federal courts must "refrain from exercising their jurisdiction when relief may interfere with certain state proceedings." *Ewell v. Toney*, 853 F.3d 911, 916 (7th Cir. 2017); *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018). Additionally, "the basic doctrine of equity jurisprudence [affirms] that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43.

"The civil brand of *Younger* extends only to a federal suit filed by a party that is the target of state court or administrative proceedings in which the state's interests are so important that exercise of federal judicial power over those proceedings would disregard the comity between the states and federal government." *SKS & Assocs. v. Dart*, 619 F.3d 674, 678 (7th Cir. 2010) (collecting cases); *Sprint Commc'ns., Inc. v. Jacobs,* 571 U.S. 69, 79 (2013) ("Our decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects'" and "are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act").

But where the relief would not unduly interfere with the state proceedings, where there is no adequate remedy in those proceedings, and where the federal plaintiff is not a target of those proceedings, the general rule governs: "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citation omitted).

As set forth below, the Plaintiffs' requested relief does not interfere with CHINS proceedings, the Plaintiffs' alleged injuries cannot be redressed in those proceedings, the Plaintiffs' are not targets of those proceedings, and the state's interests do not warrant "blind deference to 'States' Rights.'" *Younger*, 401 U.S. at 44. Accordingly, abstention is unwarranted.

### B. Plaintiffs' relief would not enjoin, delay, or unduly interfere with CHINS proceedings.

At the heart of *Younger*, and all abstention doctrines, is the concern that equitable relief will "unduly interfere with the legitimate activities of the States." *Younger*, 401 U.S. at 44; *NOPSI*, 491 U.S. at 359; *Ewell*, 853 F.3d at 916; *Courthouse News*, 908 F.3d at 1071; *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021) ("Allowing that federal disruption and interference would offend the principles on which the abstention doctrines rest. [The plaintiff] seeks a level of intrusion by the federal courts that is 'simply too high.'") (quoting *Courthouse News*, 908 F.3d at 1074). Every case in which the Supreme Court has applied *Younger* involved relief that enjoined, delayed, or unduly interfered in the state criminal, quasi-criminal, or judicial enforcement proceedings.[14]

The undue interference analysis has been thoroughly explored in the context of child welfare proceedings. In *Moore v. Sims*, the Supreme Court applied *Younger* because the parents sought, and the federal district court granted, orders enjoining the individual proceedings, reversing the juvenile court's custody orders, and enjoining all individual proceedings under the

---

[14] *See, e.g., Younger v. Harris*, 401 U.S. 37 (1971) (criminal defendant seeking to enjoin enforcement of California's Criminal Syndicalism Act); *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (theater owner seeking to seeking to enjoin enforcement of a provision of Ohio's nuisance statute); *Trainor v. Hernandez*, 431 U.S. 434 (1977) (class of welfare recipients seeking to enjoin enforcement of Illinois' Attachment Act); *Moore v. Sims*, 442 U.S. 415 (1979) (parents seeking to vacate the juvenile court orders and enjoin enforcement of Title 2 of Texas Family Code); *Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986) (religious school seeking to enjoin enforcement of Ohio's civil rights laws as applied to religious organizations); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) (attorney seeking to enjoin the pending disciplinary proceedings); *Juidice v. Vail*, 430 U.S. 327 (1977) (class of contemptors seeking to enjoin enforcement of numerous sections of the Judiciary Law of the State of New York governing contempt proceedings); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987) (company seeking to enjoin enforcement of the state court's orders).

challenged statute. *See Moore v. Sims*, 442 U.S. 415, 420-422, 432 (1979). "That determination [by the federal district court] . . . [was] the subject of [the] appeal" in *Moore*. *Id*. at 422.

Following *Moore*, the Seventh Circuit routinely abstained under *Younger* or general principles of federalism in cases where parents sought to modify juvenile court orders, enjoin individual proceedings, or invalidate state statutes. *See, e.g., J.B.*, 997 F.3d at 720 (parent seeking to enjoin enforcement of one provision of the Illinois Marriage and Dissolution of Marriage Act); *Milchtein v. Chisholm*, 880 F.3d 895, 897-898 (7th Cir. 2018) (parents seeking a declaration, enforceable in future proceedings, that the juvenile court orders failed to accommodate their religious beliefs); *Brunken v. Lance*, 807 F.2d 1325, 1328 (7th Cir. 1986) (grandparent seeking to enjoin DCFS from interfering with unsupervised visits with his granddaughter).[15]

Additionally, courts have abstained in cases where plaintiffs sought to "indirectly accomplish the kind of interference that *Younger v. Harris* and related cases sought to prevent," *O'Shea v. Littleton,* 414 U.S. 488, 490 (1974), typically where plaintiffs challenged juvenile court procedures and named state courts and judges as defendants. For example, in *Nicole K. v. Stigdon*, 990 F.3d 534 (7th Cir. 2021), plaintiffs challenged the lack of representation for children in child welfare proceedings and named as defendants superior and circuit court judges. In *E.T. v. Cantil-Sakauye,* 682 F.3d 1121 (9th Cir. 2012), plaintiffs challenged the adequacy of representation for children in child welfare proceedings and named as defendants a superior court judge and various judicial administration officials. The relief in *Nicole K.* would have required appointment of counsel, and the Seventh Circuit abstained under general principles of federalism. The relief in

---

[15] *See also, e.g.*, ECF No. 23 at 22 (citing *Hatch v. Ind. Dep't of Child Servs.*, 2018 U.S. Dist. LEXIS 58082, at *2 (N.D. Ind. Apr. 5, 2018) (parent seeking "injunctive relief in the form of the immediate return of his daughter to his custody"); *Rangel v. Reynolds*, 2007 U.S. Dist. LEXIS 29598, at *7 (N.D. Ind. Apr. 18, 2007) (parents seeking to modify the juvenile court's custody order); *Garcia v. Fox*, 2019 U.S. Dist. LEXIS 94668, at *3 (N.D. Ill. June 5, 2019) (parents seeking to enjoin the juvenile court proceedings and modify the custody order)).

*E.T.* would have required removal of counsel, and the Ninth Circuit abstained under *O'Shea*. Both forms of relief would have removed this core judicial function, and the associated constitutional questions, from the state court and handed it to a federal court.

But where, as in this case, a class of foster children does not challenge state statutes, judicial functions, or court orders, and does not name state courts or judges as defendants, federal courts have consistently held that there is no interference with state court proceedings, let alone undue interference, that would warrant abstention under *Younger*.[16]

As a practical matter, because Plaintiffs have not named state courts or judges as defendants, any orders by this Court would have no binding effect on state courts or judges. Thus, contrary to DCS's contention, it is simply not possible for this Court to "replace" Indiana courts. *See* ECF No. 23 at 25. CHINS proceedings will continue without interference, "left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44.

Although the requested relief "may enrich the variety of dispositional alternatives available to a juvenile court judge"—for example, by increasing the array of adequate placements and services—it would not have the "wholly disruptive consequences associated with enjoining a state judicial proceeding or enjoining further enforcement of a state statute." *L.H. v. Jamieson*, 643 F.2d 1351, 1354 (9th Cir. 1981). And although dependency courts exercise continuous jurisdiction over

---

[16] *See, e.g., LaShawn A. by Moore v. Kelly*, 990 F.2d 1319 (D.C. Cir. 1993); *Jonathan R. v. Justice*, 41 F.4th 316, 321 (4th Cir. 2022); *L.H. v. Jamieson*, 643 F.2d 1351, 1354 (9th Cir. 1981); *Joseph A. v. Ingram*, 275 F.3d 1253, 1257 (10th Cir. 2002); *Jeremiah M. v. Crum*, 2023 U.S. Dist. LEXIS 173564, at *37-38 (D. Alaska Sep. 28, 2023); *Ashley W. v. Holcomb*, 2021 U.S. Dist. LEXIS 214154 (S.D. Ind. Sep. 29, 2021), *rev'd* 34 F.4th 588, 593 (7th Cir. 2022); *Wyatt B., et al. v. Kate Brown, et al.*, 2021 U.S. Dist. LEXIS 184389, at *17-18 (D. Or. Sept. 27, 2021); *Bryan C. v. Lambrew*, 2021 U.S. Dist. LEXIS 190891, at *22 (D. Me. Oct. 4, 2021); *M.D. v. Perry*, 799 F. Supp. 2d 712, 723 (S.D. Tex. 2011), *aff'd sub nom. M.D. v. Abbott*, 907 F.3d 237, 287-288 (5th Cir. 2018); *T.F. v. Hennepin Cty.*, 2018 U.S. Dist. LEXIS 25841 (D. Minn. Feb. 16, 2018); *M.B. v. Corsi*, 2018 U.S. Dist. LEXIS 3232 (W.D. Mo. Jan. 8, 2018)*; Tinsley v. McKay*, 156 F.Supp.3d 1024 (D. Az. 2015); *Connor B. v. Patrick*, 771 F.Supp.2d 142 (D. Mass. 2011); *Dwayne B. v. Granholm*, 2007 U.S. Dist. LEXIS 28265 (E.D. Mich. Apr. 17, 2007); *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277 (N.D. Ga. 2003); *Nicholson v. Williams*, 203 F. Supp. 2d 153, 231 (E.D.N.Y. 2002); *Charlie H. v. Whitman*, 83 F. Supp. 2d 476 (D.N.J. 2000); *Brian A. by Brooks v. Sundquist*, 149 F. Supp. 2d 941 (M.D. Tenn. 2000); *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662 (S.D.N.Y. 1996); *K.H. v. Morgan*, 1989 U.S. Dist. LEXIS 10516 (N.D. Ill. Sep. 6, 1989).

individual cases, "[t]he coherency of the state action is not disrupted by subsequent federal judicial action, undercutting the need expressed by *Younger* for federal equitable restraint." *Id*. The relief sought in this case ensures "a proper respect for state functions" and the "vital consideration' of comity." *Younger*, 401 U.S. at 44; *NOPSI*, 491 U.S. at 364.

### C. CHINS proceedings cannot provide an adequate remedy for Plaintiffs' injuries, and federal courts can grant Plaintiffs' specific, concrete relief.

Defendants, looking through an *Ashley W*. microscope, incorrectly allege that "[t]he federal claims Plaintiffs raise in this suit, including their constitutional claims, could be raised in the ongoing Indiana CHINS proceedings." ECF No. 23 at 21. This case is not *Ashley W*.

In *Ashley W.*, much of the requested relief was available in the CHINS proceedings. *See Ashley W.*, 34 F.4th at 593 ("So it becomes important to know just what relief the two children with live claims want that could not be provided by the judge in a CHINS proceeding. Much of the oral argument of this appeal was devoted to that subject, and counsel for the plaintiffs could not identify any."). For example, children seeking an order for juvenile courts to conduct permanency hearings every three months instead of every year can make that request in the CHINS proceedings, and "the judge hearing the CHINS case has authority to reduce the time between hearings if that seems appropriate." *See Ashley W.*, 34 F.4th at 593. Similarly, children insisting that provisions of state law that they think are "underenforced, be fully enforced" is "a problem that CHINS judges can fix, if the state laws and regulations are pointed out to them." *Ashley W.*, 34 F.4th at 594.

And the relief that was unavailable in the CHINS proceedings was not specific or concrete enough for a federal court to order such relief. If "placements are too slow" "or are made less than optimally" "because there aren't enough people willing to serve as foster parents," or if the "bureaucracy moves sluggishly and makes too many mistakes," "what can a federal court do about

these things that a CHINS judge could not? Counsel did not have an answer." *Ashley W.*, 34 F.4th at 593-94. Absent any answers from counsel, the court was left to its imagination. It imagined "a contention that the state must increase the payments offered to people willing to be foster parents, or that the Department needs money to hire more social workers so that the caseload of each may be reduced, but counsel for the plaintiffs disclaimed any argument that a federal court could or should increase the agency's budget." *Ashley W.*, 34 F.4th at 594. Without shedding any light on precisely how a federal court might be able to address the plaintiffs' systemic harms, the court found it "hard to see what options are open to a federal court but closed to a CHINS court." *Ashley W.*, 34 F.4th at 594.

Here, by contrast, Plaintiffs' complaint seeks specific, concrete remedies that are within the unique power of a federal court to grant and beyond the scope of an individual CHINS proceeding. Despite Defendants' attempt to superimpose *Ashley W.* onto this lawsuit, *see* ECF No. 23 at 19, 26, the plain text of Plaintiffs' complaint reveals material differences that comport with the Seventh Circuit's holding in *Ashley W.* Rather than addressing the actual relief requested by Plaintiffs in their complaint, Defendants misstate the relief requested. *See* ECF No. 23 at 23 (clipping from Plaintiffs' complaint). But DCS fails to explain how its mischaracterized version of the relief Plaintiffs request would remedy Plaintiffs' injuries.[17]

**1. CHINS Courts Cannot Order Defendants to Recruit and Retain Sufficient Foster Homes.**

---

[17] *See Jeremiah M. v. Crum,* 2023 U.S. Dist. LEXIS 173564, at *37-38 (D. Alaska Sep. 28, 2023) ("Defendants direct Plaintiffs to CINA courts to address their individual placements and services. But Plaintiffs do not seek changes to their individual placements and services through this lawsuit. They seek systemic relief from injuries resulting from systemic flaws. Instructing Plaintiffs to secure change by challenging OCS's placement decision in their individual case is a Sisyphean task that will not relieve Plaintiffs from their injuries—the constant placement disruptions, the lack of access to services, the lack of case planning. If a CINA court orders OCS to come up with a different placement for a Plaintiff or to provide that Plaintiff particular services, the injures complained of here remain.").

First, CHINS courts are unable to address DCS's failure to recruit and retain a sufficient number of appropriate foster homes. In *Ashley W.*, the plaintiffs did not articulate, either in the complaint or at oral argument, any form of relief that would increase the number of foster homes. Here, by contrast, Plaintiffs identify specific actions by DCS that contribute to the current foster home crisis, *see* Dkt 16. at ¶¶249-258, and seek specific, concrete relief that is likely to improve recruitment and retention of foster parents, *see id.* at IV(f)-(j), which will reduce placement instability and improve outcomes for children.

A CHINS court cannot order DCS to "establish a recordkeeping system sufficient to maintain and update medical records," or to "ensure foster parents and adoptive parents are provided with a child's full and accurate medical information prior to or at the time of placement." It cannot require DCS to establish a "crisis response system that provides immediate crisis response on-site and coordinate subsequent stabilization services" or "a crisis helpline that connects foster parents and children to licensed clinicians who can help de-escalate crises and prevent the need for more restrictive interventions." And it cannot "[r]equire that DCS develop and implement a policy that prohibits retaliation against foster parents who request services for children placed with them." A federal court can order such relief.

## 2. CHINS Courts Cannot Address Caseworkers and Caseloads.

Next, consider caseworkers and caseloads. In *Ashley W.*, plaintiffs' complaint listed one form of relief: "[e]njoin Defendants from failing to maintain caseloads for all workers providing direct supervision and planning for children at accepted professional standards," and "[r]equire that DCS periodically verify that it is meeting and maintaining the applicable caseload standards." *See* App. L to Defs'. Mot. to Dismiss, ECF No. 20 (*Ashley W.* amended complaint). But, as the Seventh Circuit asked, what exactly can the state do about this problem short of increasing their

salaries? In this lawsuit, Plaintiffs provide specific, concrete relief that targets the root causes of DCS's caseworker crisis.

Child welfare workers are constantly exposed to society's most grueling atrocities: crimes against children. The emotional tax is astronomical, and the threats to their physical safety exact a significant psychological toll. Although salary increases may, as the Seventh Circuit imagined, help recruit additional caseworkers, that alone will not alleviate the emotional and psychological burdens that contribute to caseworker turnover. As turnover increases, caseloads increase and caseworkers are unable to perform their jobs, which places foster children at significant risk of harm, compounds the emotional and psychological trauma, and exacerbates the vicious cycle of caseworker turnover. *See* ECF No. 16 at ¶¶208-221.

To escape this cycle of crisis, caseworkers need substantial support from the agency. Plaintiffs seek relief that is likely to improve caseworker recruitment and retention. *See id.* at IV(c) ("Require that DCS establish a free confidential peer-counseling helpline for caseworkers"); IV(d) ("Require that DCS establish regional non-caseload carrying units that can absorb cases from local offices when caseworkers quit or take leave"); IV(e) ("Require that DCS establish a commissioner-level office dedicated to providing caseworkers with support, resources, and sustainable wellness practices necessary to ensure their physical safety, psychological wellbeing, and professional growth"). This relief will improve caseloads, *see id.* at IV(b), reversing the cycle of crisis and improving outcomes for foster children, *see id.* at IV(a), (k)-(m), (p). A CHINS court cannot order DCS to establish the kind of caseworker support programs listed in Plaintiffs' complaint, and Indiana does not argue otherwise.

**3. CHINS Courts Cannot Grant Relief for Plaintiffs' Constitutional Claims.**

To be sure, "Indiana cases clearly show" that parents challenging the constitutionality of state court orders can raise their constitutional challenges in those proceedings and on appeal. *See* ECF No. 23 at 21 (collecting cases). In those cases, however, the state court could also grant the requested relief, i.e. modify or vacate custody orders on the basis that the process violated their constitutional rights. *See id.* (citing *Brunken*, 807 F.2d at 1331 ("state courts are just as able to enforce federal constitutional rights as federal courts.")). It is not enough that plaintiffs may simply raise their constitutional claims; the state court must also be capable of providing "an adequate remedy." *Younger*, 401 U.S. at 43; *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813-14 (1976) (quoting *Alabama Pub. Serv. Comm'n v. Southern R. Co.*, 341 U.S. 341, 361 (1951)) ("'it was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.'"). CHINS courts cannot provide an adequate remedy for Plaintiffs' injuries here.

CHINS proceedings may provide an opportunity for an individual foster child to challenge the appropriateness of their individual placements or the adequacy of their individual services, which have been approved, and can be modified, by the CHINS court. But CHINS proceedings do not afford them the opportunity to argue that the agency's statewide policies and practices create conditions of confinement that place either the individual child or all foster children at serious risk of irreparable harm in violation of the Fourteenth Amendment, nor does the CHINS court have the authority to grant relief beyond the individual case before it.[18] And even if Plaintiffs in this case could raise their constitutional claims in CHINS proceedings, those proceedings cannot produce a remedy capable of *enforcing* the federal constitutional rights raised in the proceedings (i.e. cannot

---

[18] *See, e.g.*, ECF No. 23 at 14-16 (listing examples of CHINS court orders in Plaintiffs' individual cases that are unrelated to the Plaintiffs' alleged injuries arising from DCS's systemic failures).

redress the plaintiffs' alleged injuries). Thus, the Plaintiffs do not have "an adequate remedy at law" and will "suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43.

Finally, DCS's "you can't always get what you want" argument reveals a critical misunderstanding about the nature of Plaintiffs' alleged injuries. *See* ECF No. 23 at 27-29. Unlike in the foster care cases cited by Defendants, *see id*. at 28, Plaintiffs here are not arguing that the state forum is inadequate because their preferred procedural mechanism (class action) is unavailable in CHINS proceedings. Rather, Plaintiffs contend that the relief that a CHINS court *can* award is not adequate to redress Plaintiffs' alleged injuries.[19] In other words, Plaintiffs' argument is about the inadequacy of *existing* forms of relief, not the absence of certain procedural mechanisms.

To illustrate, assume that a child in a CHINS proceeding *can* proceed on behalf of a class. If the class alleges that DCS's actions contribute to the lack foster homes, placing them at substantial risk of harm associated with placement mismatching, placement instability, and disruption of medical and mental health services, it would make little sense for the class members to seek placement changes in their individual cases. CHINS courts with jurisdiction over the class members' individual cases could certainly grant such relief. But without addressing the agency's policies and practices beyond the individual CHINS case, this relief will likely thrust the child back into the very cycle of systemic harm that the Plaintiffs are challenging here in federal court. It wouldn't merely fail to eliminate the risk of harm caused by the agency's policies and practices; it would *increase* the risk of harm to the child. As this example illustrates, the problem is not the

---

[19] *See Jeremiah M.*, 2023 U.S. Dist. LEXIS 173564, at *38 ("If a [juvenile] court orders [the agency] to come up with a different placement for a Plaintiff or to provide that Plaintiff particular services, the injures complained of here remain. By contrast, the relief requested here—such as requiring [the agency] to provide services to all children whose case plans identify a need for services, manage caseloads at a certain level, and conduct annual case record reviews 'to measure how likely children in Defendants' custody are to receive timely permanence'—is likely to redress Plaintiffs injuries.").

unavailability of class-wide relief in the CHINS proceeding. The problem is that CHINS proceedings are simply incapable of granting relief that would redress the alleged injuries.

Nevertheless, *Younger* itself supports the proposition that the unavailability of class-wide relief may render the state forum inadequate. In *Younger*, the Supreme Court rejected the criminal defendant's challenge because "the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a *single* criminal prosecution." *Younger*, 401 U.S. at 46 (emph. added). The Court applied the same principle to the class in *Juidice*, holding that "the individual named plaintiffs—'had an opportunity to present their federal claims in the state proceedings,'" and the threat to their federally protected rights could be eliminated by raising their defenses in their individual proceedings. ECF No. 23 at 27. A class action is a mechanism intended to protect against threats to rights that cannot be eliminated in a single state proceeding.[20] Because Plaintiffs' injuries cannot be addressed in a single CHINS proceeding, the threat to Plaintiffs' federally protected rights remains, and Plaintiffs will continue to "suffer irreparable harm if denied equitable relief." *See Younger*, 401 U.S. at 43.

### D. CHINS proceedings are not akin to criminal prosecutions, and Plaintiffs are not targets of CHINS proceedings.

Because the Seventh Circuit resolved *Ashley W.* on the basis that the plaintiffs' relief could be granted in the CHINS proceedings, it did not decide whether the CHINS proceedings or the federal plaintiffs were of the type to which *Younger* has been applied. *See SKS & Assocs.*, 619 F.3d at 678 (collecting cases). Indeed, even as the Seventh Circuit held that "*Younger* applies to state-initiated child-welfare litigation," it refused to "resolve *Younger* arguments about CHINS

---

[20] *Cf. Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002) ("Because the Juvenile Court Act did not provide A.D. with a mechanism to present a claim against her relatives and the other state defendants for their alleged violations of her constitutional rights, she did not have a reasonable opportunity to present her claims for purposes of the *Rooker-Feldman* doctrine.").

proceedings as an all-or-none matter" because "the scope and complexity of CHINS proceedings makes a one-size-fits-all solution inapt." *Ashley W.*, 34 F.4th at 593.

The Seventh Circuit's restraint in *Nicole K.* and *Ashley W.* was prudent as a categorical decision would create federalism problems of its own. Ongoing CHINS proceedings are intended to support children who are the victims of serious wrongdoing. *Younger* applies to civil enforcement proceedings that are "'akin to a criminal prosecution' in 'important respects,'" *Sprint,* 571 U.S. at 79, and "extends only to a federal suit filed by a party that is the target of state court or administrative proceedings." *SKS & Assocs.*, 619 F.3d at 678. Defendants would have this Court believe that foster children are victims for purposes of state law but targets for purposes of *Younger*. This Court should deny DCS's request to have its cake and eat it too.

CHINS proceedings and the federal plaintiffs here do not share the key attributes of criminal prosecutions. Civil enforcement actions require an antecedent violation of state law; child victims of abuse and neglect have not violated any state laws, and DCS does not allege wrongdoing by the children (the federal plaintiffs). DCS initiates CHINS proceedings on behalf of the child, not against the child (i.e. the child is not "the target" of those proceedings). *See* Ind. Code § 31-34-9-1; Indiana CHINS and Family Law Deskbook 4-54 (2017) (while "[a] criminal case is instituted to prosecute an offender for the protection of the child victim and society as a whole," "[t]he purpose of a CHINS case is to protect and obtain permanency for the child"). CHINS proceedings derive authority from statutory provisions governing family law, not state criminal codes. *Compare* Ind. Code § 35-46-1, *with* Ind. Code § 31-34. The proceedings are governed by civil rules of procedure and evidence. *See* Indiana CHINS and Family Law Deskbook 4-54 (2017) ("CHINS litigation, as opposed to criminal litigation, follows the civil trial rules of procedure (IC 31-32-1-3), the law of discovery for civil cases (IC 31-32-10-3), and the preponderance of the

15

evidence standard (IC 31-34-12-3)"). And children in CHINS proceedings are not entitled to an attorney. *See* Ind. Code § 31-32-4-1. In sum, these proceedings bear none of the hallmarks of criminal prosecutions and are not the type of civil enforcement proceedings to which the Supreme Court has applied *Younger*; and unlike the parents in *Moore* and similar cases, children are not the targets of those proceedings.

As further evidence, compare CHINS proceedings to the other juvenile proceedings in Indiana: (1) Dual Status: children who committed a crime listed in the Indiana criminal code, *see* Ind. Code §§ 31-37-1-2, 31-41-1-2; and (2) Criminal Status: children between ages 16-18 who committed a felony, *see* Ind. Code § 31-30-1-4. Criminal proceedings against juveniles are just that: criminal proceedings. Juvenile delinquency proceedings are the quintessential quasi-criminal proceeding: the child committed criminal offenses under state law and prosecutors bring charges to enforce those state laws, *see* Ind. Code § 31-37-1-2, the child has a right to counsel in the proceedings, *see* Ind. Code § 31-32-4-2, and criminal rules of evidence and procedure apply to the proceedings, *see* Ind. Code § 31-32-1-1. But the ultimate goal is rehabilitation, not retribution. *See* Ind. Code § 31-32-2-6. Juvenile delinquency proceedings are "'akin to a criminal prosecution' in 'important respects,'" and dual status juveniles are "the target[s]" of those proceedings. *Sprint,* 571 U.S. at 79; *SKS & Assocs.*, 619 F.3d at 678.[21] CHINS proceedings, by contrast, do not bear these essential attributes and cannot reasonably be considered "akin to criminal prosecutions."

Holding that CHINS proceedings are "akin to criminal prosecution" and characterizing victims of abuse and neglect as targets of those proceedings places the imprimatur of wrongdoing on children who have committed no wrong and contravenes the clear intent of the Indiana legislature to protect child victims of abuse and neglect from any implication of wrongdoing. To

---

[21] However, dual status children may still prevail under *Younger* so long as the requested relief does not unduly interfere with the proceedings and there is no adequate remedy in those proceedings.

the extent this Court sees federalism problems with Plaintiffs' relief, those can be mitigated throughout the course of the litigation through careful tailoring. But Defendants' argument here creates an unmitigable federalism problem; it would be a direct and permanent affront to the intent of the state legislature.

### E.  *Younger* requires consideration of countervailing federal interests and does not warrant blind deference to state interests.

It is undisputed that child welfare proceedings implicate important state interests. *See* ECF No. 23 at 20. But the existence of important state interests "does not mean blind deference to 'States' Rights.'" *Younger*, 401 U.S. at 44; *Logan v. U.S. Bank Nat'l Ass'n*., 722 F.3d 1163, 1167 (9th Cir. 2013) (noting that "[the] 'important state interest' . . . tag line is not an invitation to abstain simply because a suit implicates a state law, even one involving a traditional state concern."). A state "could identify a plausibly important state interest" in nearly every state judicial proceeding, and merely invoking a state interest does not warrant abstention. *Sprint,* 571 U.S. at 81. Instead, courts must balance state interests against important federal interests. *See Younger*, 401 U.S. at 44 ("What the concept [of federalism] does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments. . .").

The federal interest in child welfare is substantial. For decades, the federal government has maintained an interest in ensuring that federal funding for state child welfare systems is used to benefit foster children. There is no unique or predominating state interest where, as here, in exchange for federal funds, a state willingly subjects its foster care system to federal oversight. *See* 42 U.S.C. §§ 671, 672 (establishing detailed conditions that participating states must satisfy to receive federal funding); *M.D. v. Perry*, 799 F. Supp. 2d 712, 726 (S.D. Tex. 2011) ("The voluntary submission to such federal oversight greatly lessens the force of any complaints regarding unwarranted federal intrusion on state sovereignty."). Indeed, Indiana's federal funding

is conditioned on DCS, the "agency administering the State plan," assuming responsibility for "the child's placement and care." 42 U.S.C. § 672(a)(2)(B).

Moreover, the state's interest in enforcing its laws in civil enforcement proceedings, and the comity concern associated with interfering in such proceedings, is attenuated where the federal plaintiff is not a target of the state enforcement proceedings, *see SKS & Assocs.*, 619 F.3d at 678, and where the proceedings are not akin to criminal prosecutions, *see Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) ("The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature."). *See supra* at Section I.D.

## II.    *Rooker-Feldman* does not apply because Plaintiffs' allegations are unrelated to a state court decision, and Plaintiffs do not forfeit standing.

The *Rooker-Feldman* doctrine is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments . . ." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The vital question . . . is whether the federal plaintiff seeks the alteration of a state court's judgment." *Milchtein*, 880 F.3d at 898.

DCS frames its *Rooker-Feldman* argument as a Catch-22. First, it argues that Plaintiffs' relief is barred by *Rooker-Feldman* because it would force the federal court to "second-guess or alter any custody placement or other decision made by Indiana state courts presiding over Plaintiffs' CHINS cases." ECF No. 23 at 32. Second, DCS contends that if Plaintiffs try to evade *Rooker-Feldman* by disclaiming any relief related to state court orders, Plaintiffs necessarily forfeit standing because the only way to only way to redress injuries caused by state courts is to modify or vacate those orders. *Id*.

The fundamental flaw with Defendants' argument is that it ignores Plaintiffs' theory of causation. Plaintiffs are not "state-court losers," they do not allege that their "injuries [were] caused

by state-court judgments," they do not "seek[] the alteration of a state court's judgment," and their remedy does not "depend[] upon this Court finding that an Indiana CHINS court erred in any custody, placement, or other decision." ECF No. 23 at 31. To the contrary, Plaintiffs recognize that CHINS courts are doing everything they can to ensure that foster children receive adequate care. Instead, Plaintiffs take issue with DCS policies and practices. DCS has failed to recruit and retain sufficient numbers of qualified caseworkers, foster homes, and service providers, and as a result of those failures, case plans, placements, and services suffer, and foster children are placed at significant risk of harm. CHINS courts are not responsible for DCS's failures.

Indeed, not a single paragraph of the complaint cited by DCS alleges that the Plaintiffs were injured by the CHINS court. *See* ECF No. 23 at 29 (citing ECF No. 16 at ¶¶ 20, 67-69, 81-83, 96-98, 107, 145-148, 163-164, 173, 192-195). By contrast, all the *Rooker-Feldman* examples cited by DCS involved plaintiffs seeking to modify prior state court orders concerning custody or termination of parental rights.[22] Moreover, as previously explained, because Plaintiffs have not named state court judges as defendants, any orders by this Court would have no effect on prior state court judgements. *See supra* at Section I.B.

For additional proof, look to Plaintiffs' request for class certification under Rule 23(b)(2). If Plaintiffs were seeking relief in their individualized cases under 23(b)(3), they would certainly lose certification because that relief would require a case-by-case review. A harmonious reading

---

[22] *See* ECF No. 23 at 31 (citing *T.W. by Enk v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997) (attacking "the judgment of the Wisconsin state courts awarding custody of the children to the aunt"); *Bates v. Ohio*, 715 F. App'x 554, 554 (7th Cir. 2018) ("Plaintiffs acknowledge that [they seek alteration of the state court judgement]. They even captioned their complaint in federal court, and their brief in this court, as an 'appeal' from the child-custody rulings."); *Pettit v. Ind. Dep't of Child Servs.*, 2015 U.S. Dist. LEXIS 2412, at *9 (S.D. Ind. Jan. 9, 2015) (holding that the parent's challenge to the factual and legal grounds for the CHINS court's custody order was "inextricably intertwined with the state court's orders because this court would have to examine the state court's reasoning for removing the children"); *Liedel v. Juvenile Court of Madison Cty.*, 891 F.2d 1542, 1544-45 (11th Cir. 1990) (parents seeking to "enjoin the Juvenile Court from enforcing all of its prior orders in the child custody proceedings," which "would effectively nullify those state orders"); *Garcia v. Fox*, 2019 U.S. Dist. LEXIS 94668, at *6 (N.D. Ill. June 5, 2019) (parents requesting the federal court to "review any prior orders from the ongoing juvenile court")).

of the complaint shows that Plaintiffs' relief targets systemic problems in the agency that affect the putative class uniformly, not individual court judgements that vary across the putative class.

Defendants' Catch-22 fails for the same reason. As in the cases cited by Defendants, plaintiffs who allege that their injuries are caused by prior state court orders can only redress those injuries by modifying or vacating those orders. Plaintiffs here, by contrast, do not trace their injuries to CHINS court judgments, and therefore modifying or vacating those judgements will not redress Plaintiffs' alleged injuries. For example, modifying a CHINS court placement decision will not address DCS practices that reduce the number of placements. Indeed, as previously explained, modifying those orders may exacerbate Plaintiffs' injuries by plunging them back into the very cycle of harm that Plaintiffs' allege caused their injuries. *See supra* at Section I.C.4.

Defendants either misunderstand the causation alleged in this case or they misrepresent the allegations to sustain their argument. Either way, *Rooker-Feldman* does not apply because Plaintiffs do not allege that their injuries are caused by CHINS courts, nor do they seek to alter any CHINS court judgements. And Plaintiffs have standing because the requested relief will redress the injuries caused by DCS's policies and practices. *See supra* at Section I.C.

## CONCLUSION

Neither *Younger* nor general principles of federalism preclude this Court from providing the relief Plaintiffs seek, which only this Court can provide. Indeed, fundamental principles of equity compel it. Accordingly, Plaintiffs respectfully request this Court to deny DCS's motion to dismiss.

Dated: October 31, 2023                    Respectfully submitted,

                                           s/ Kimberly Kennedy
                                           Kimberly Kennedy, No. 37547-71
                                           SouthBank Legal
                                           100 E. Wayne Street, Suite 300
                                           South Bend, IN 46601
                                           Telephone: 574-968-0760
                                           Facsimile: 574-968-0761
                                           kkennedy@southbank.legal

                                           Marcia Robinson Lowry (*pro hac vice pending*)
                                           Anastasia Benedetto (*pro hac vice pending*)
                                           David Baloche (*pro hac vice*)
                                           A Better Childhood
                                           355 Lexington Avenue, Floor 16
                                           New York, NY 10017
                                           Telephone: (646) 795-4456
                                           Facsimile: (212) 692-0415
                                           mlowry@abetterchildhood.org
                                           abenedetto@abetterchildhood.org
                                           dbaloche@abetterchildhood.org

                                           Aaron Marks (*pro hac vice pending*)
                                           Kirkland & Ellis, LLP
                                           601 Lexington Avenue New York, NY 10022
                                           Telephone: (212) 446-4800
                                           Facsimile: (212) 446-4900
                                           aaron.marks@kirkland.com

                                           Kelsey Bleiweiss (*pro hac vice pending*)
                                           Kirkland & Ellis, LLP
                                           300 North LaSalle, Chicago, IL 60654
                                           Telephone: (312) 862-3044
                                           Facsimile: (312) 862-2200
                                           kelsey.bleiweiss@kirkland.com

                                           *Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on October 31, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Kimberly A. Kennedy